Marion T. WEATHERFORD and Leona
M. Weatherford, Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 76–3676.

United States Court of Appeals,
Ninth Circuit.

Sept. 12, 1979.

Charles A. Phipps, The Dalles, Or., argued for plaintiffs-appellants.

Peter R. Taft, Asst. Atty. Gen., Washington, D. C., on brief; Glen R. Goodsell, Asst. U. S. Atty., Washington, D. C., argued, for defendant-appellee.

Before KENNEDY and TANG, Circuit Judges, and JAMESON,* District Judge.

KENNEDY, Circuit Judge:

This is an appeal by landowners from a judgment entered after a court trial in an eminent domain proceeding. In 1948, appellants Marion and Leona Weatherford acquired an easement extending, generally, from the Columbia River to their dry farm land about eleven miles away.[1] The easement and the land in question are near the town of Arlington, Oregon. The easement was for construction and maintenance of an irrigation pipe line from the Columbia River to the Weatherfords' property. Irrigation facilities have never been constructed on the easement, although the Weatherfords conducted certain feasibility studies for this purpose.

---

* Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

1. The continuity of the easement is very much in question. The Weatherfords' property lies approximately eight miles to the southeast of the southerly termination point of the easement. In addition portions of the easement were lost when severed by the rights-of-way of the Union Pacific Railroad and U. S. Highway 30.

In 1962, in connection with the John Day Lock and Dam Project, the United States undertook the relocation of U. S. Highway 30 in the vicinity of the subject properties. As part of the highway relocation for this purpose, the Government condemned a large tract of land, including part of the Weatherfords' easement. Through oversight, however, the United States did not include the easement in the declaration of taking.

In 1972, the Weatherfords filed a quiet title action to determine their rights in the easement. The district court found that the appellants were still the owners of the easement, but that the United States could retain possession upon payment of just compensation pursuant to 28 U.S.C. § 2409a(b). The district court awarded possession and ownership of the easement to the United States, and the point on appeal is the adequacy of the compensation it awarded to the appellants.

 The district court ordered $550 compensation, based on the nominal value of the easement only. Appellants claim that the easement should have been valued for its potential use to transport water from the Columbia River to their farm and that the appropriate measure of damage is the difference between the value of the farm as irrigated land and its value without that irrigation. Whether or not that precise measure of damages is the correct one is not important, since we agree with the district court that the appellants are not entitled to compensation for loss of the right to irrigate, however that compensation is properly measured.

The district court reached its conclusion that loss of irrigation rights was not compensable by its finding that taking of the easement was pursuant to the Government's exercise of its navigational servitude in the Columbia River and that appellants were not therefore entitled to compensation for diminution in value resulting from termination of access to the river. We agree with the court's conclusion.

The power of the United States to regulate navigation confers on the Government a "dominant servitude." As the Supreme Court explained in *United States v. Rands*, 389 U.S. 121, 123, 88 S.Ct. 265, 267, 19 L.Ed.2d 329 (1967):

> The proper exercise of this power is not an invasion of any private property rights in the stream or the lands underlying it, for the damage sustained does not result from taking property from riparian owners within the meaning of the Fifth Amendment but from the lawful exercise of a power to which the interests of riparian owners have always been subject. . . . Thus, without being constitutionally obligated to pay compensation, the United States may change the course of a navigable stream, . . . or otherwise impair or destroy a riparian owner's access to navigable waters, . . . even though the market value of the riparian owner's land is substantially diminished.

In *Rands* the Government condemned riparian lands along the Columbia River. The Court held that the Government did not have to compensate the owner for the value of the land as a port site. The additional value of the land as a port site depended on the use of the water and because of the Government's dominant navigational servitude, the owner had no right to the water as against the United States.

The decision in *Rands* relied heavily on two previous cases, *United States v. Virginia Electric & Power Co.*, 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961), and *United States v. Twin City Power Co.*, 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240 (1956). In *Virginia Electric*, the Government condemned a riparian flowage easement owned by a private power company that was using the stream to generate power. The Court held that the Government was not required to give compensation for the loss of access to the stream, although the owners were entitled to the value derived from "uses of the land not dependent upon the flow of the stream." 365 U.S. at 629, 81 S.Ct. at 789. In *Twin City* the Government condemned land that was a potential site for a hydroelectric power plant. The Court held that

the Government must compensate the owner for the land taken but that the compensable value of the land did not include its worth as a potential hydroelectric site. The Court stated that the value of the land as a site for a power plant was "due to the flow of the stream; and if the United States were required to pay the judgments below, it would be compensating the landowner for the increment of value added to the fast lands if the flow of the stream were taken into account." 350 U.S. at 226, 76 S.Ct. at 261.

In this case, the value that appellants claim the easement contributed to the farm stemmed from their alleged capacity to remove water from the Columbia River for irrigation. This alleged incident of ownership is dependent on the flow of the stream.

Appellants attempt to distinguish *Rands, Virginia Electric* and *Twin City*. They argue that the Government's navigational servitude does not include the power to appropriate a flowage easement which is above the high water mark. This contention is without merit. *Virginia Electric* involved the taking by the Government of a flowage easement above the high water mark. The Court there applied the doctrine of navigational servitude and the claimant was not entitled to the value of the easement for its water-related use. As the Court noted, "though the Government's navigational privilege does not extend to lands beyond the high-water mark of the stream, the privilege does affect the measure of damages when such land is taken." 365 U.S. at 629, 81 S.Ct. at 788.

Finally, appellants contend that *Rands, Virginia Electric* and *Twin City* are not applicable because here the easement was condemned in connection with the construction of a road rather than in connection with a project affecting navigable waters. We need not decide whether if the property were taken for a purpose wholly unrelated to navigable streams a different rule concerning compensation might apply. *See United States v. 50 Foot Right of Way*, 337 F.2d 956, 960 (3d Cir. 1964). *See also United States v. Gerlach Live Stock Co.*, 339

U.S. 725, 737, 70 S.Ct. 955, 94 L.Ed. 1231 (1950). In this case the United States was constructing the John Day Lock and Dam Project in the Columbia River, a navigable stream. Because the reservoir created by the dam would increase the water level, U. S. Highway 30 would have been submerged. Therefore, as an integral part of the dam project, the Government found it necessary to relocate the road. We conclude, as did the district court, that the taking was substantially related to the United States exercise of its powers over navigation and that the doctrine of navigational servitude does apply. *See United States v. Commodore Park, Inc.*, 324 U.S. 386, 65 S.Ct. 803 (1945); *United States v. 422,978 Square Feet of Land*, 445 F.2d 1180 (9th Cir. 1971).

AFFIRMED.